FILED
 2008 Sep-16  AM 09:27
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

TONI D. CRUTCHFIELD,

    PLAINTIFF,

VS.                                              CASE NO.: CV-08-J-559-S

MICHAEL ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

## Procedural Background

The plaintiff applied for Disability Insurance Benefits and Supplemental Security Income and was found to suffer from diabetes mellitus, type II, hypertension, arthritis of the left knee, a depressive disorder, not otherwise specified, and a psychophysiological reaction to pain (R. 22). Subsequent to hearing, the ALJ rendered an opinion finding that the plaintiff was not under a disability (R. 20-27).

The plaintiff argues that the ALJ failed to properly develop the record, did not consider the record as a whole, failed to obtain treatment records from plaintiff's two

psychiatric hospitalizations in April 2005, and mischaracterized medical records concerning the plaintiff's use of alcohol. Plaintiff's memorandum of law (doc. 9), at 6-7. For the reasons set forth herein, this case is **REVERSED and REMANDED** to the Agency for further proceedings as outlined below.

## Factual Background

The plaintiff was 35 years old at the time of the hearing, having been born July 11, 1970 (R. 66). She completed the twelfth grade (R. 38) and had not worked since July 2004 when she was terminated for excessive absences (R. 38). She testified that she is unable to work due to depression, diabetes (R. 39), knee pain (R. 42), back pain, high blood pressure, reflux and upper respiratory problems (R. 43). She explained that she is tired, has a lack of interest, feels worthless, and has panic attacks and hallucinations (R. 39, 41).

During the hearing, the plaintiff was asked no questions as to her ability to sit, stand, walk, lift, carry or concentrate. However, the ALJ asked a vocational expert (VE) to assume an individual who can sit for eight hours in an eight hour work day, stand or walk for six hours in an eight hour work day, lift and carry up to 20 pounds occasionally and ten pounds frequently, with an additional limitation of no climbing, and further limitation of no more than moderately complex tasks, no responsibility for the safety of others, and no activities requiring excessive speed (R. 59). Given such limitations, the VE testified that the plaintiff could return to her past relevant

work as a sorter and customer service representative (R. 60). In response to a question from plaintiff's counsel, the VE testified that if the plaintiff were found to have a marked limitation in concentration, she would be unable to meet the demands of work (R. 61).

In the Disability Report – Appeal contained in the record, the plaintiff informed that her condition had changed since her first Disability Report, in that she tried to commit suicide (R. 136). No mention of this was made by the ALJ.

The plaintiff's medical records in November 2003 reflect that she suffered from hypertension, obesity, diabetes (poorly controlled), migraine headaches, and that she was noncompliant with her medical treatment (R. 145). Prior x-rays of her left knee were unremarkable (R. 169). She also had a prior diagnosis of probable bilateral carpal tunnel syndrome (R. 169).

In March 2004 the plaintiff's medical records reflect that she was "distraught. Can't work, can't sleep, can't eat. Suicidal thoughts but no plans. Has kids and wants to be there for them. Quit taking all meds for a while but back on them now" (R. 172). The plaintiff was also complaining of pain in her left knee (R. 176). An x-ray of her left knee showed the joint space was well maintained with minor osteoarthritic changes (R. 195).

In July 2004 the plaintiff was still complaining of pain in her left knee as well as swelling (R. 170). Medical records note "depression – generally improved on

Prozac" and that the plaintiff was attending counseling (R. 170). At that time, her diabetes and high blood pressure were noted to be inadequately controlled (R. 170). An office note reflects that the plaintiff was attending counseling for her depression and had lots of social stressors, but that her coping mechanisms had improved (R. 234).

The plaintiff was sent for a consultative psychological evaluation in October 2004 (R. 196). She related that she did not drive because of her "nerves" and that she was "paranoid of other cars" (R. 196). She related that she was unable to work because of depression (R. 196). Dr. Gloria Henderson, Ph.D. found the plaintiff's statements to be fully credible (R. 196). The plaintiff admitted to a lack of motivation, low energy, sadness, anhedonia, tearfulness, decreased sleep, feelings of hopelessness and worthlessness, concentration problems, and suicidal thoughts without any intent or plan (R. 196, 197). Dr. Henderson found the plaintiff to present with a flat affect and mildly depressed mood, which improved with tests of cognitive functioning (R. 198). The plaintiff was also noted to have limited insight onto her psychological functioning and limited ability to adjust to day-to-day situations (R. 198).

Dr. Henderson formed a diagnosis of depression NOS (R. 199). In Dr. Henderson's opinion, the plaintiff could understand, remember and carry out instructions, had intact social skills, could respond appropriately to supervision and

relate adequately to co-workers, and appeared capable of handling mild work pressure (R. 199). Dr. Henderson noted that the plaintiff reported a history of depression but had not sought further treatment (R. 199). Dr. Henderson concluded that, in her opinion, plaintiff displayed no psychiatric impairment which would prevent her from functioning productively in a work environment, but would likely function best in a low-stress environment (R. 199).

Another knee x-ray in February 2005 again found nothing of concern (R. 249). An MRI of the left knee in April 2005 found no visible defect and exercise and anti-inflammatory medication was recommended (R. 215).

The plaintiff was seen for an intake evaluation at the Eastside Mental Health Center in March 2005 (R. 256). Among other things, the plaintiff related that she had begun hearing voices that told her to jump out of her car or to take off her clothes and run down the street naked (R. 256). She further stated that she had seen spots and shadows but denied any paranoid thought (R. 256). She related that she had planned to kill herself by not taking her medication (R. 257). Medication was noted not to be helpful, but followed by the statement that the plaintiff was not taking Prozac regularly (R. 260). She was diagnosed as suffering from Major Depressive Disorder, Recurrent, Severe with Psychotic Features, and assigned a GAF of 45. She had follow-up appointments scheduled for April 13, 2005, and April 27, 2005 (R. 260). The next record is from May 2005 and states that the plaintiff was hospitalized from

April 11 through April 16, 2005, because she was suicidal (R. 255). Psychiatric notes on May 20, 2005, note that the plaintiff may actually suffer from bi-polar illness (R. 255) and had been sabotaging herself by not taking medication in the hope she would die (R. 255). In June 2005 the plaintiff was again assigned a GAF of 45. At that time, she was noted to have auditory and visual hallucinations (R. 252).

The ALJ found that the opinion of medical expert Dr. Nafoosi, who testified at the hearing, was consistent with the evidence as a whole (R. 23). Therefore, the ALJ accepted Dr. Nafoosi's testimony that the plaintiff could perform light work, including lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing and walking for 6 hours in an 8 hour work day, and sitting for 8 hours in an eight hour work day (R. 23).

The ALJ further opined that the plaintiff's most significant impairment is depression (R. 23). He considered the consultative evaluation of Dr. Henderson and stated that he "concurs with Dr. Henderson's assessment, which is supported by the overall evidence" (R. 24). He also considered the testimony of Dr. Malincharvil at the hearing, and noted that he accepted and adopted that testimony, because it was consistent with the evidence as a whole (R. 24). The ALJ noted that the plaintiff's medical records reflected that she had been hospitalized for four days in April 2005 (R. 24), but neither questioned the plaintiff about this nor made any effort to obtain these records.

The ALJ concluded that the plaintiff could perform light work as long as it did not involve the safety of others and further noted that the plaintiff was precluded from "tasks requiring excessive speech (sic) such as rapid assembly work" (R. 25). The ALJ also noted that the plaintiff drank beer when she was depressed and "it is common knowledge alcohol exacerbates depression"[1] (R. 25). The ALJ theorized, rather omnisciently, concerning the plaintiff's friend who completed a Daily Activities Questionnaire on the plaintiff's behalf, that "it is obvious she does not know the extent of the claimant's non-compliancy with treatment and with medication" (R. 26). He therefore found the friend's opinion not entitled to great weight (R. 26). The ALJ ultimately determined that the plaintiff could return to her previous work as a sorter and as a customer service representative (R. 26).

## Standard of Review

The initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

---

[1] No basis for this "common knowledge" is offered by the ALJ.

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993). The Commissioner's factual findings are conclusive if supported by substantial evidence. In contrast, the Commissioner's conclusions of law are not presumed valid. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered from the severe impairments of diabetes mellitus, type II, hypertension, arthritis of the left knee, a depressive disorder, not otherwise specified, and a psychophysiological reaction to pain (R. 22), but none of these impairments alone or in combination equaled the criteria of any of the Listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 25). He further opined that the plaintiff's mental impairments contributed only mild restrictions in her activities of daily living and social functioning, and further that she had only mild to moderate limitations in maintaining

concentration, persistence and pace (R. 25). The ALJ concluded that she retained the residual functional capacity to perform work at the light exertional level (R. 25). He further held that if a person is non-compliant with her treatment when the treatment will restore the person's ability to work, that person will be found not disabled (R. 25).

This court cannot conclude that the ALJ's finding that the plaintiff can perform her past relevant work is supported by substantial evidence. Records in evidence at the time the ALJ rendered his decision support a conclusion that the plaintiff was hospitalized because she was suicidal (R. 255). That same medical note reflects that the plaintiff was intentionally not taking her medication so she would die (R. 255).

Without the hospitalization records, the ALJ had no basis for determining the severity of the plaintiff's mental limitations. At the hearing, the plaintiff testified that she had been going to therapy every two weeks since April 2005 (R. 49). She saw the doctor every three months (R. 49). The last mental health record in the file was from June 2005 even though the hearing was not until December 2005. No attempt to obtain updated records was made, even though the ALJ recognized that the plaintiff's "most significant impairment is depression" (R. 23).

The plaintiff further testified she had been diagnosed as bipolar (R. 50). The ALJ failed to consider this diagnosis in his opinion. In fact, the following exchange

occurred between the plaintiff and the medical expert at the hearing, after she stated she had been diagnosed as bipolar:

> ME2:    Okay. All right. Is there any time you feel a lot of energy and that you can – yes?
> CLMT:   Yes
> ME2:    When? When is the last time you felt a lot of energy?
> CLMT:   It's been about three weeks ago.
> ME2:    Okay. What did you do?
> CLMT:   I got up around 4:00 in the morning and I was cleaning up the kitchen and I cleaned up the kitchen real good and mopped and swept.
> ME2:    So that way you got your kitchen cleaned up. What else did you do?
> CLMT:   I –
> ME2:    That's a good thing. Right?

(R. 51). The plaintiff then explained why she did not seek mental health treatment from October 2003 until April 2005 (R. 52). She went to her medical doctor, who prescribed Amitriptyline (R. 52). She then went to another medical doctor, who prescribed Trazadone, because the plaintiff was having trouble sleeping (R. 52). She then testified that "...I had never heard of depression. I didn't know what symptoms you were supposed to have, because I thought it was something to do with my diabetes and when I talked to someone, they told me that I needed to get counseling" (R. 52).

The sole question the plaintiff was asked during the hearing concerning the hospitalization was by medical expert Malincharvil, who stated, "Now, you went into

the hospital. At that time you were drinking. Right? This is in March of '05" (R. 56). Despite the references to the plaintiff being hospitalized in April 2005 because she was suicidal, this was the only time it was mentioned during the hearing. The ALJ should have obtained these records. "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997). Additionally, medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512(e); 416.912(e). In this case, that would include obtaining updated records from Eastside Mental Health Center as well as the hospitalization records.

Although the ALJ finds that "the record shows that the claimant does not take her medication for depression and diabetes as prescribed..." (R. 25), the ALJ fails to make any mention of the medical records which note that the plaintiff failed to take her medication because she was trying to "sabotage" herself. Rather, the ALJ concludes only that "[i]f a person is non-compliant with her treatment when the treatment will restore the person's ability to work, that person will not be found disabled" (R. 25). This was in spite of Dr. Malincharvil's testimony that there was no evidence of noncompliance and further that the plaintiff was not malingering (R. 58). In contradiction of the ALJ's suggestion that the plaintiff was non-compliant, the ALJ

also stated he accepted and adopted the testimony of Dr. Malincharvil, which would include the above statement as well (R. 24).

The plaintiff's failure to adhere to prescribed treatment cannot be grounds for denial of benefits when the reason for such failure is beyond the plaintiff's control, such as stemming from the effect the plaintiff's psychological impairment has on her ability to treat her medical problems.  *See Lucas*, 918 F.2d at 1574 (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir.1988).  That effect should have been considered by the ALJ.  *Id*.

The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.  The ALJ's finding that the plaintiff has the ability to return to her past relevant work is not entirely supported by the medical evidence contained in the record.  Given the evidence before this court, the court is unable to determine that the proper legal analysis has been conducted.  In evaluating whether it is necessary to remand, the court must consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir.1995).

As such, this court must reverse the decision of the ALJ for purposes of remanding this case to the ALJ to obtain the records of plaintiff's psychiatric hospitalization, updated mental health records, further consideration of the evidence,

proper application of the law, and any further development of the record deemed necessary for these purposes.

## Conclusion

This court finds the decision of the Commissioner is not based on substantial evidence and that evidence for an informed decision as to whether the plaintiff is capable of performing her past relevant work is lacking.  Remand is appropriate where the record is insufficient to affirm, but also insufficient to find the claimant disabled.  *Baguer v. Apfel*, 65 F.Supp.2d 1345, 1348 (M.D.Fla.1999); citing *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980).

Based on the lack of substantial evidence in support of the ALJ's findings, the ALJ's failure to apply the proper legal standards, and the medical evidence in the record, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED.**  This case is **REMANDED** to the Agency to obtain the April 2005 hospitalization records, for further consideration of the evidence and proper application of the law, as detailed above.

**DONE** and **ORDERED** this 16th day of September, 2008.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE